## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

TRAMAINE JERNIGAN,

      Plaintiff,

v.                                   No. 19-cv-1177-WJ-JHR

FNU VALENCIA, DEBORAH
GARCIA, JANEL SARRACINO,
RICARDO SALAYANDIA, MAXINE
MONTOYA, DANIEL PETERS, and
ERNIE HOLGUIN,

      Defendants.

### MEMORANDUM OPINION AND ORDER OF DISMISSAL

THIS MATTER is before the Court on Plaintiff Tramaine Jernigan's Tort Complaint (the "Complaint"), filed originally in New Mexico's First Judicial District Court and removed to this Court by Defendants because it includes claims arising under the United States Constitution and 42 U.S.C § 1983. Plaintiff is a prisoner at Southern New Mexico Correctional Facility. He is proceeding *pro se*. Having reviewed the Complaint and the relevant law pursuant to the screening requirement of 28 U.S.C. § 1915A, the Court will dismiss the Complaint for failure to state a claim upon which relief can be granted. Plaintiff will be granted an opportunity to amend.

I.      <u>Facts</u>.

For the limited purpose of this Memorandum Opinion and Order, the Court assumes, but does not decide, that the following facts taken from the allegations in the Complaint are true.

At the beginning of the relevant timeframe, Plaintiff was imprisoned at the Northwest New Mexico Correctional Facility ("NNMCF") and classified as a level II prisoner. (Doc. 1-1 at 4).

CoreCivic operates NNMCF pursuant to a contract with the New Mexico Corrections Department (NMCD). (See Doc. 1). Formerly a women's prison, NNMCF now houses men. (Doc. 1-1 at 4).

NNMCF was subject to certain NMCD policies which, *inter alia*, required inmates to "wear a complete institutional uniform with the shirt tucked in" and allowed level II inmates to hug, kiss, and hold hands with their visitors. (Doc. 1-1 at 4). Plaintiff alleges that Defendant Valencia (the prison warden) implemented contravening policies—requiring level II prisoners to wear yellow segregation suits and prison-issued shower shoes and prohibiting physical contact between inmates and visitors. (Id.). Plaintiff also alleges that the meals at NNMCF were calorically deficient by 1,000 calories a day. (Doc. 1-1 at 4). This, Plaintiff alleges, was the result of NNMCF's continued service of "female portions" after the facility was converted from a women's to a men's facility. (Id.). Plaintiff alleges that he filed "numerous grievances on the illegal visitation practice and meal portions with no response from Defendant Valencia." (Doc. 1-1 at 5).

In January 2019, the NNMCF prisoners went on a food strike to protest the meal portions and the visitation policies. (Doc. 1-1 at 5). Plaintiff alleges that Valencia, who blamed him for the food strike, told Plaintiff that if he did not put an end to it by breakfast time (apparently of the following day), he would be transferred to another facility. (Doc. 1-1 at 5). Plaintiff, allegedly having "no influence or power over the inmate population," was unable to stop the food strike and he was immediately transferred to Southern New Mexico Correctional Facility (SNMCF). (Doc. 1-1 at 5, 6).

After Plaintiff was transferred, Defendant Deborah Garcia (the investigator at NNMCF) issued a misconduct report against him related (apparently) to the food strike. (Doc. 1-1 at 3, 5). A week later, Defendant Ricardo Salayandia (the disciplinary hearing officer at SNMCF) gave the

misconduct report[1] to Plaintiff. (Doc. 1-1 at 3, 6). Plaintiff alleges that he gave Salayandia a list of witnesses who could confirm that he had not organized or participated in the food strike and that Salayandia, in turn, gave the list to Defendant Janel Sarracino (the disciplinary officer at NNMCF). (Doc. 1-1 at 3, 6). Plaintiff alleges that, without talking to any of them, Sarracino told Salayandia that the listed witnesses had no statement. (Doc. 1-1 at 6). Plaintiff also alleges that Salayandia intimidated one of the witnesses to prevent him from supporting Plaintiff.[2] (Doc. 1-1 at 6).

Plaintiff alleges that leading up to his disciplinary hearing, Garcia, Montoya, Sarracino, and Salayandia colluded against him by falsifying evidence, using confidential information in a manner inconsistent with NMCD policies, and using the false information to amend the misconduct report to add charges of which he was given no notice. (Doc. 1-1 at 7). He alleges further that Defendant Maxine Montoya (the disciplinary officer at SNMCF) told him before the hearing that he would be found guilty based on his disciplinary history.  (Doc. 1-1 at 3, 6). Ultimately, Plaintiff was found guilty of the alleged misconduct. (Doc. 1-1 at 8). Consequently, he lost 180 days of good time and 180 days of canteen. (Doc. 1-1 at 8). Plaintiff appealed the decision to Defendant Daniel Peters (the warden at SNMCF) who affirmed the decision. (Doc. 1-1 at 3, 8).

Distinct from the allegations arising from the food strike and the related disciplinary hearing, Plaintiff also alleges that Defendant Ernie Holguin (the SITU/K-9 officer at SNMCF) subjects him to racial and religious discrimination. (Doc. 1-1 at 3, 8). Holguin has allegedly threatened Plaintiff with violence, repeatedly locked him in segregation without just cause, and

---

[1] Although it is not entirely clear from the allegations in the Complaint, it appears that the misconduct report Plaintiff received at SNMCF was the one issued by Defendant Garcia and that the misconduct report issued by NNMCF was prosecuted at SNMCF.

[2] It is unclear from the allegations in the complaint whether the witness Salayandia allegedly intimidated was a witness to the food strike incident at NNMCF to whom Salayandia somehow had access or whether the witness was privy to an incident of alleged misconduct by Plaintiff at SNMCF.

made comments impugning Plaintiff's race and religion.  (Doc. 1-1 at 9). Plaintiff alleges that Holguin also interferes with his relationships by recording his phone calls with various women and uses "an alleged FBI agent" to provide recordings or transcripts of the calls to the other women. (Doc. 1-1 at 8). Grievances filed by Plaintiff related to Holguin's treatment of him have allegedly resulted in harassment and generalized "false trumped-up misconduct reports," by unspecified actors. (Doc. 1-1 at 9).

Based on the foregoing, Plaintiff broadly alleges that Defendants, in their individual and official capacities, violated his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution. (Doc. 1-1 at 2). He also implies that Defendants are liable in tort, though his theories of tort liability are not specified. (Doc. 1-1). He seeks a declaratory judgment for the deprivation of due process in the disciplinary proceeding that led to the loss of good time and damages for Defendants' alleged retaliation against him for filing grievances, for harassment, interference with his relationships, and for racial/religious discrimination. (Doc. 1-1 a 10).

II.   Discussion.

A.   Standard of Review.

Where, as here, a prisoner civil rights action is removed from state court, the Court screens the claims under 28 U.S.C. § 1915A.  *See Carr v. Zwally*, 760 F. App'x 550, 553-54 (10th Cir. 2019) (§ 1915A provides for *sua sponte* review of inmate complaints against government officials, even if they are removed from state court).  Under § 1915A, the Court must dismiss a prisoner civil action *sua sponte* "if the complaint ... is frivolous, malicious, or fails to state a claim on which relief may be granted." 28 U.S.C. § 1915A(b).  The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because he is *pro se*, the Court construes Plaintiff's pleadings "liberally" and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (discussing the Court's construction of *pro se* pleadings). This means that "if the court can reasonably read the pleadings to state valid claim on which [he] could prevail, it should do so despite [his] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction or his unfamiliarity with pleading requirements." *Id.* It does not mean, however, that the court should "assume the role of advocate for the pro se litigant." *Id.*

B. Plaintiff's § 1983 Claims.

42 U.S.C. § 1983 provides a cause of action for "the deprivation of any rights, privileges or immunities secured by the Constitution and laws of the United States" a person acting under color of state law. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *McLaughlin v. Bd. of Trs. of State Colls. of Colo.*, 215 F.3d 1168, 1172 (10th Cir. 2000). More specifically, a plaintiff must allege that each government official, through the official's own individual actions, violated his Constitutional rights. *Ashcroft*, 556 U.S. at 676; *McGee v. Lawless*, 524 F. App'x 585, 587 (10th Cir. 2020). There must also be a connection between the official conduct and the Constitutional violation. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006). The complaint must clearly identify "exactly *who* is alleged to have done *what* to *whom*"

so that each defendant has notice of the basis of the claims against them, particularly. *Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008).

Plaintiff's Complaint was drafted on a standard Tort Complaint form used in the New Mexico state courts. In the first section of the form, requiring a plaintiff to state the nature of the action, Plaintiff noted that Defendants are responsible for policies that violated his Eighth, First, and Fourteenth amendment rights.  (Doc. 1-1 at 2). Beyond that, Plaintiff's allegations and ostensible claims make no connection between the Defendants' alleged conduct and Plaintiff's constitutional rights. The Court will not craft Plaintiff's legal theories for him. *See Abdelsamed v. U.S.*, 13 F. App'x 883, 884 (10th Cir. 2001) (a pro se litigant's pleadings are entitled to liberal construction, but the Court is "under no obligation to craft legal theories" for him); *Smith v. U.S.*, 561 F.3d 1090, 1096 (10th Cir. 2009) (notwithstanding *pro se* status, the Court will not "construct a legal theory on a plaintiff's behalf"). Instead, the Court will provide Plaintiff an overview of the relevant legal standards apparently invoked by Plaintiff and give him an opportunity to file an according amended complaint.

1.  The Individual Defendants Cannot Be Sued in Their Official Capacity.

Plaintiff alleges that each Defendant is being sued in their individual and their official capacities.  (Doc. 1-1 at 3). In their official capacities, however, Defendants are not subject to liability under § 1983. Though "state officials literally are persons[,] . . .  a suit against a state official in his or her official capacity . . . is no different from a suit against the state itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, in the context of § 1983, "officials acting in their official capacities [cannot] be held liable for violating another's constitutional rights." *Id.*  To the extent that any of Plaintiff's claims are brought against any of the Defendants in their official capacities, such claims are not viable under § 1983 and must be dismissed.

2.  <u>The Alleged Violations of NMCD Policy are not Actionable Under § 1983</u>.

Throughout the Complaint, Plaintiff alleges that Defendants' conduct violated several NMCD policies pertaining, *e.g.*, to prisoners' attire, to contact with visitors, to the investigation into the misconduct that led to the disciplinary proceedings against him, and to the composition of the misconduct report. These alleged policy violations are not actionable under § 1983. *Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) (Alleged violations of prison regulations are not cognizable under § 1983); *Lehman v. McKinnon*, 2021 WL 4129229, *4 (10th Cir. Sept. 10, 2021) (same); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional violation."). This is because prison regulations and administrative policies are not intended "to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 482 (1995). Instead, they are "primarily designed to guide correctional officials in the administration of a prison[.]" *Id.* at 481-82. To the extent Plaintiff seeks relief for alleged policy violations, the claims are not cognizable under § 1983 and must be dismissed.

3.  <u>First Amendment Claims</u>.

In relevant part, the First Amendment to the United States Constitution protects the free exercise of religion, the freedom of speech, the right to peaceably assemble, and the right to petition the Government for a redress of grievances. "[A] prison inmate retains those First Amendment rights that are not inconsistent with this status as a prisoner or with the legitimate penological objectives of the prison system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Accordingly, prison regulations and actions of prison officials that impinge on an inmate's First Amendment rights are valid "if [they are] reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Frazier v. Dubois*, 922 F.2d 560, 562 (10th Cir. 1990) (same). At the same time, it is unlawful for a prison official to retaliate against or harass an inmate

7

because the inmate engaged in constitutionally protected activity. *Frazier*, 922 F.2d at 562; *Fogle v. Pierson*, 435 F.3d 1252, 1263–64 (10th Cir. 2006).

Though it is not clear from the Complaint, Plaintiff may seek to state claim of retaliation for exercising his First Amendment rights. "An inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson v. Shank*s, 149 F.3d 1140, 1144 (10th Cir. 1998) (italics omitted). Specifically, he must plead facts showing: "(1) that [he] was engaged in constitutionally protected activity; (2) that the defendant's actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to [his] . . . constitutionally protected conduct." *Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018).

The allegations in the Complaint are inadequate to state a First Amendment retaliation claim. To the extent Plaintiff seeks to state a claim that his transfer out of NNMCC was retaliatory, it is unclear from the allegations in the Complaint what activity Plaintiff claims was protected— *i.e.*, the fact that he filed grievances related to the prison's meal and visitation policies or his ersatz organization/control of the hunger strike. It is also unclear who decided to transfer him and what facts exist to support a theory that the decision was substantially motivated by Plaintiff's allegedly protected activity. If Plaintiff wishes to pursue a First Amendment retaliation claim, he should file an amended complaint clarifying the grounds for his claim and endeavor to include specific allegations that comport with the foregoing legal standards.

To the extent Plaintiff seeks to state a First Amendment retaliation claim against Holguin, the allegations in the Complaint are likewise insufficient to state a claim. Plaintiff appears to allege that that Holguin retaliated against him for filing grievances by threatening him with violence

when he was handcuffed and by making racist and discriminatory comments to him, including: "the Muslims have all the drugs at SNMCF"; he does not like Plaintiff's "black ass"; and "blacks use Islam as a front to deal drugs and engage in prison politics." (Doc. 1-1 at 9). While such conduct is objectively disdainful, the Tenth Circuit has held that verbal harassment does not constitute adverse action sufficient to support a retaliation claim. *See Requena*, 893 F.3d 1211 (holding that a retaliation claim based on prison official's "unprofessional and unpleasant" conduct including calling the plaintiff "a 'dumb Indian,'[and] harassing him 'all night while in segregation,'" does not support a retaliation claim); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) ("[V]erbal harassment or abuse ... is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983."); *accord Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (insulting, disrespectful, or sarcastic comments directed at an inmate "do not, without more, constitute an adverse action" for purposes of stating a retaliation claim). Any such claim is therefore dismissed.

    4. Eighth Amendment Claims.

The Eighth Amendment prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring inmates receive the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). These necessities include "adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).

To prove that prison conditions amount to cruel and unusual punishment, the plaintiff must satisfy an objective requirement and a subjective requirement. That is, he must prove (1) that the condition complained of is, "objectively, sufficiently serious" that it "results in the denial of the minimal civilized measure of life's necessities"; and (2) that the prison official's state of mind was one of "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834

(1994). In other words, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to innate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.* at 837.

It is not clear what conduct by which Defendant Plaintiff alleges violated his Eighth Amendment rights. To the extent that the violation is based on the alleged "meager" meals, the claim is not viable as pled. While "[a] substantial deprivation of food may be sufficiently serious to state a . . . claim under the Eighth Amendment," *Strope v. Sebelius*, 189 F. App'x 763, 765–66 (10th Cir. 2006), Plaintiff does not provide facts supporting the implication, inherent in this claim, that male prisoners objectively need 1,000 calories a day more than female prisoners or that the alleged caloric deficit posed a substantial risk of serious harm to him of which Valencia (or any Defendant) was aware but did nothing to remediate. *See*, *e.g.*, *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002) (holding that the plaintiff did not state an Eighth Amendment claim based on the prison's refusal to provide him with double portions where there was a difference in medical opinions about whether it was medically necessary to do so); *Strope v. Sebelius*, 189 F. App'x 763, 765–66 (10th Cir. 2006) (The Eighth Amendment standard is satisfied if the prison provides inmates with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and wellbeing of the inmates who consume it."); *Waterman v. Tippie*, 2019 WL 687894, at *3 (D. Kan. Feb. 19, 2019) (alleging that meals are "scanty" does not state an Eighth Amendment claim). To the extent that Plaintiff intended to state a claim based on the clothing he was forced to wear, the allegations in the complaint—which essentially are that he did not like the color of the uniform or the style of the shoes—likewise fail

to satisfy the objective or subjective requirements of an Eighth Amendment claim. *See e.g., Khan v. Barela*, 808 F. App'x 602, 612-13 (10th Cir. 2020) (An Eighth Amendment claim for inadequate clothing is viable if the clothing/lack of clothing presents a serious risk to inmate health or safety; such a claim is not viable if it is alleged that the clothing is merely uncomfortable). Plaintiff's Eighth Amendment claims—such as they appear—must be dismissed accordingly.

     5.  Fourteenth Amendment Claims.

     a.  Due Process. The Due Process Clause of the Fourteenth Amendment protects persons against deprivations of life, liberty, or property. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies[.] *Wilkinson v. Austin*, 545 U.S. 209, 221, (2005) (citations omitted). Liberally construing Plaintiff's Complaint, it appears that Plaintiff may seek to pursue due process claims related to his visitation rights, his right to privacy, and related to the disciplinary proceedings against him arising from the food strike

     i. Visitation. To the extent that Plaintiff claims a deprivation of due process arising from the prohibitions on physical contact with his visitors, the claim is not viable as pled. Inmates do not have a constitutionally protected liberty interest in "unfettered visitation." *Coleman v. Long*, 772 F. App'x 647, 649 (10th Cir. 2019), *citing Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). Nor is there a fundamental constitutional right to contact visitation. *See Ramos v. Lamm*, 639 F.2d 559, 580 n. 26 (10th Cir. 1980). As prison administrators have substantial discretion in defining penological goals and determining the most appropriate means to accomplish them, the burden is on the Plaintiff to show that the prohibition does not serve a legitimate penological interest. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *Block v. Rutherford*, 468 U.S. 576, 577-78 (1984) ("That there is a valid, rational connection between a ban on contact visits and internal

security of a detention facility is too obvious to warrant extended discussion"; thus, prison administrators' discretionary decisions to impose such restrictions should be accorded deference); *Coleman*, 772 F. App'x at 650 (recognizing that prison administrators may withdraw visitation privileges as part of prison management technique and to effect prison discipline). Plaintiff has not alleged that he has a constitutionally protected right to contact-visitation, nor has he alleged that Valencia lacked a legitimate penological reason for effecting the no-contact policy. The claim must therefore be dismissed.

      ii. <u>Prison Disciplinary Proceedings</u>. To the extent Plaintiff raises due process concerns in the context of the prison disciplinary proceedings against him, the claim is not properly before the Court in this civil complaint. A state prisoner's § 1983 claim that would necessarily imply the invalidity of their conviction or sentence must be dismissed "unless [he] can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). This prevents a "collateral attack on a conviction through the vehicle of a civil suit." *Heck*, 512 U.S. at 484. Pursuant to the "*Heck* doctrine" a prisoner cannot seek § 1983 damages related to a conviction or sentence, until he successfully challenges it in a state federal habeas proceeding. *Muhammad v. Close*, 540 U.S. 749, 751 (2004). The same is true of prison disciplinary decisions. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (extending the *Heck* doctrine); *see Cardoso v. Calbone*, 490 F. 3d 1194, 1199 (10th Cir. 2007) (recognizing that the *Heck* doctrine applies to "challenges to punishments imposed as a result of prison disciplinary infractions."). To the extent that Plaintiff claims that he was deprived of due process in the prison disciplinary proceedings such that his accordant punishments were unlawful, the claim is barred under *Heck* and *Edwards*. The claim must therefore be dismissed.

Nevertheless, the lawfulness and validity of those proceedings can be raised in a habeas petition. The Court will mail a form habeas petition to Plaintiff so that he may, if he wishes to, pursue his due process challenge to the disciplinary proceeding.

iii.  Right to Privacy. Plaintiff's allegations that Holguin recorded and shared his personal conversations with women might be construed as seeking to state a due process right-to-privacy claim. *Sheets v. Salt Lake Cty.*, 45 F.3d 1383, 1387 (10th Cir. 1995) ("Due process implies an assurance of confidentiality with respect to certain forms of personal information possessed by the state." (Alterations omitted)); *but see Leiser v. Moore*, 903 F.3d 1137, 1144 (10th Cir. 2018) (The Supreme Court has made clear that it is an "open question" whether there is a constitutional right to prevent government disclosure of private information.). Such claim, which would be tenuous at best, is not viable on the allegations pled. To state a claim for violation of a right to privacy, the plaintiff must show the information is entitled to a legitimate expectation of confidentiality. *Sheets*, 45 F.3d at 1387. Moreover, "disclosures are prohibited only when they shock the conscience." *Leiser*, 903 F.3d at 1144.  Inmates do not have a legitimate expectation of confidentiality with respect to phone calls, *U.S. v. Gangi*, 57 F. App'x 809, 814 (10th Cir. 2003), and Holguin's alleged conduct, though perhaps unusual and meddlesome, does not shock the conscience of the Court. *See Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008) ("[O]nly the most egregious official conduct" will satisfy this standard.); *see also Leiser*, 903 F.3d at 1144-45 (comparing government disclosure of a person's HIV positive status or a person's transsexualism, which were conscience shocking disclosures, with government disclosure of a person's fibromyalgia or cancer diagnosis—which were not). Based on the foregoing standards, to the extent the Complaint includes a claim based on an alleged violation of the right to privacy, it must be dismissed.

b.  Equal Protection.

The Equal Protection clause of the Fourteenth Amendment "directs that all similarly situated persons should be treated alike." *Grissom v. Roberts*, 902 F.3d 1162, 1173 (10th Cir. 2018). As discussed earlier, Plaintiff alleges that Holguin made racist and discriminatory remarks. Allegations of racial and religious discrimination typically are brought as equal protection claims. To prevail in such a claim, a plaintiff must show that prison officials treated him differently from similarly situated prisoners. *Hale v. Fed. Bureau of Prisons*, 759 F. App'x 741, 752 (10th Cir. 2019). Plaintiff has not alleged that he was treated differently from any other prisoners. Holguin's alleged racist remarks, standing alone, are not enough to state an Equal Protection claim. *See Collins*, 603 F.2d at 827; *Williams v. Levansailor*, 153 F.3d 730, *1 (Table) (10th Cir. 1998) (collecting cases).

For all of the foregoing reasons, Plaintiff's § 1983 claims must be dismissed for failure to state a claim upon which relief could be granted.  If Plaintiff chooses to file an amended complaint, he should endeavor to abide by the legal standards and principles discussed above.

III.    <u>Plaintiff's Tort Claims</u>.

It is not clear from the complaint what tort theories Plaintiff intends to pursue, and the Court will not guess at what they might be. If Plaintiff chooses to file an amended complaint that seeks damages based on any alleged tortious conduct committed by Defendants, he is advised that the state of New Mexico has waived sovereign immunity for specific torts as set forth in the New Mexico Tort Claims Act (NMTCA). *See* NMSA 1978 §§ 41-4-4 through 41-4-12. A tort for which immunity has not been expressly waived in the NMTCA is not actionable against the state, a state entity, or their employees. *Davis v. Bd. of Cty. Commr's of Dona Ana Cty.*, 987 P.2d 1172, 795 (N.M. Ct. App. 1999). Immunity from liability has been waived for conduct by "law enforcement officers while acting within the scope of their duties" as enumerated in NMSA 1978 § 41-4-12. It

14

is well established, however, that *corrections officers* who hold convicted persons in custody are not "law enforcement officers" such that the waiver of immunity identified in § 41-4-12 applies to their conduct. *Lymon v. Aramark Corp.*, 728 F. Supp. 2d 1222, 1254-56 (D.N.M 2010); *Callaway v. N.M. Dep't of Corrs.*, 875 P.2d 393, 397 (N.M. Ct. App. 1994) (affirming the trial court's determination that corrections officers are not law enforcement officers for purposes waiver of immunity under the NMTCA). To avoid dismissal based on sovereign immunity, Plaintiff should endeavor to plead only those tort claims, if any, for which immunity has been waived.

IV.    Plaintiff May File an Amended Complaint.

Generally, *pro se* plaintiffs should be given a reasonable opportunity to remedy defects in their pleadings. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). The opportunity to amend should be granted unless the amendment would be futile. *Hall*, 935 F.2d at 1109. Accordingly, Plaintiff shall be granted a thirty-day deadline within which to file an amended complaint. If Plaintiff declines to timely amend, the Court may dismiss the case with prejudice.

IT IS ORDERED:

(1)    Each of the claims set forth in the complaint (Doc. 1-1) are DISMISSED without prejudice.

(2)    Plaintiff is granted leave to file an amended complaint within thirty days of the entry of this Memorandum Opinion and Order. Failure to do so may result in dismissal of this case without further notice.

(3)    The Clerk's office should mail Plaintiff a blank Prisoner Civil Rights Complaint form and a blank 28 U.S.C. § 2241 habeas petition.

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE